IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

WENDI H. ANDERSON,
    Plaintiff,

v.                                                 Civil No. 3:18cv745 (DJN)

THE SCHOOL BOARD OF
    GLOUCESTER COUNTY,
    Defendant.

## MEMORANDUM OPINION
### (Granting Motion to Exclude)

Plaintiff Wendi Anderson ("Plaintiff") brings this action alleging violations of the American with Disabilities Act ("the ADA"). This matter comes before the Court on Defendant School Board of Gloucester County's ("Defendant") Motion to Exclude the Testimonies and Reports of Plaintiff's Expert Witnesses, moving to exclude the testimonies and expert reports of Alan R. Vinitsky, M.D. ("Dr. Vinitsky"), Nancy Didriksen, Ph.D. ("Dr. Didriksen"), and H. Gray Broughton ("Mr. Broughton") pursuant to *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (ECF No. 90.) For the reasons set forth below, the Court hereby GRANTS the Motion to Exclude as to Dr. Didriksen and Dr. Vinitsky.[1]

---

[1] Dr. Didriksen failed to appear for the hearing on the instant Motion due to unspecified and undocumented medical reasons. At the hearing on this Motion, counsel for Plaintiff abandoned Dr. Didriksen as an expert witness. (Hrg. Tr. 5:7-6:19.) For that reason, the Court GRANTS the Motion as to Dr. Didriksen will not address Defendant's arguments regarding Dr. Didriken's opinion. (Opp'n at 9-11.) Additionally, as to Mr. Broughton, the Motion addresses the scope of his putative testimony, but not whether his testimony comports with *Daubert*. Consequently, the Court will address his opinion at a later time if still necessary.

## I. BACKGROUND

### A. Procedural Background

From 2006 until April 2018, Plaintiff worked as a teacher at Page Middle School ("Page"), a school within Gloucester County Public Schools in Virginia. (Am. Compl. ¶¶ 1, 26 (ECF No. 9).) Defendant supervises the schools in the Gloucester County school division. (Am. Compl. ¶ 2.)

On October 30, 2018, Plaintiff filed her original Complaint. (ECF No. 1.) On April 1, 2019, she filed an eight-count Amended Complaint against Defendant, Patricia McMahon ("McMahon"), the Principal of Page, and Gwyn Cieminiecki ("Cieminiecki"), the Executive Director of Human Resources & Complaint for Gloucester County Public Schools. (Am. Compl. ¶¶ 2-4.) On May 29, 2020, the Honorable M. Hannah Lauck, U.S. District Court Judge, granted in part and denied in part McMahon's, Cieminiecki's and Defendant's Motion to Dismiss, and dismissed all counts in the Amended Complaint except Count I (Failure to Provide Reasonable Accommodations Under the ADA) against Defendant, leaving it as the only remaining Defendant. (ECF No. 17.) On October 29, 2021, this case was reassigned from Judge Lauck to the undersigned. (ECF No. 89.)

That same day, Defendant filed the instant Motion, seeking to exclude the testimonies and reports of Plaintiff's expert witnesses. (ECF No. 90.) Plaintiff responded to the Motion on November 15, 2021 (Mem. in Opp'n to Def.'s Mot. to Exclude Testimonies and Reports of Pl.'s Exps. ("Opp'n") (ECF No. 96)), and Defendant replied on November 22, 2021 (Reply Mem. in Supp. of Def.'s Mot. to Exclude the Testimonies and Reports of Pl.'s Exp. Witnesses ("Reply") (ECF No. 97)). On December 2, 2021, the Court held a hearing on the Motion to Exclude and heard testimony from one of Plaintiff's experts, Dr. Vinitsky, and two of Defendant's experts,

Dr. Mark Scarupa, M.D. ("Dr. Scarupa"), and Dr. Edward Peck III, Ph.D. ("Dr. Peck"), as well as argument on the Motion. During the hearing, the Court found Dr. Scarupa's testimony more credible than Dr. Vinitsky's, and stated that, to the extent the testimonies of the two doctors conflicted, it would give greater weight to Dr. Scarupa's testimony. (Hrg. Tr. at 147:5-16.) It also found that the testimonies of Dr. Vinitsky and Dr. Peck did not conflict. (Hrg. Tr. at 147:16-19.) After the hearing, the Court ordered the parties to submit supplemental briefing. (ECF No. 100.) On December 13, 2021, the parties filed supplemental memoranda on the Motion, rendering it ripe for review. (ECF Nos. 102-03.)

### B. Factual Background

Dr. Anderson suffers from genetic conditions that render her unable to process the toxins in fragrances at a normal rate. (Am. Compl. ¶ 28.) Consequently, she experiences extreme sensitivity to scents, and exposure to certain scents can cause her severe physical and emotional distress. (Am. Compl. ¶ 10.) Until 2017, Defendant implemented a "scent-sensitivity policy" in Plaintiff's classroom, which allowed her to inform students and parents about her condition. (Am. Compl. ¶ 11.) Screenshots of communication between Plaintiff and McMahon indicate that Plaintiff typically sent home notes to parents about her scent sensitivity and asked parents to have their students refrain from wearing certain scents in her classroom. (Am. Compl. at 9.)

At the beginning of the 2017-2018 school year, however, Plaintiff alleges that Defendant refused to provide Plaintiff with the accommodations that she had requested on the advice of her health care providers and prohibited her from informing students and parents of her scent sensitivity. (Am. Compl. ¶¶ 17-19.) Plaintiff further alleges that she suffered "the worst response to scents she had ever had in her life" on September 11, 2017, and that she experienced approximately 75 reactions at school between September and October 2017. (Am. Compl. ¶ 28.)

3

In April 2018, Plaintiff took leave from her position as a result of the severe allergic reactions that she experienced due to exposure to certain scents in the classroom. (Am. Compl. ¶ 26.) She alleges that Defendant's failure to accommodate her scent sensitivity has resulted in thyroid and autonomic nervous system failure and other compromised organ function, and she became permanently disabled as a result of Defendant's actions. (Am. Compl. ¶ 28.)

C. **The Experts**

The instant Motion seeks to exclude the opinions and testimonies of Plaintiff's experts, Dr. Vinitsky. Dr. Vinitsky served as Plaintiff's treating physician and diagnosed her with Multiple Chemical Sensitivity ("MCS") in or around 2018.[2] (Pl.'s R. 26(a)(2) Disclosures Ex. B ("Vinitsky Report") at 7 (ECF No. 48); Mem. in Supp. of Mot. to Exclude the Testimonies and Reports of Pl.'s Exp. Witnesses ("Def.'s Mem.") at 2 (ECF No. 91); Def.'s Mem. Ex. 1 ("1st Vinitsky Depo.") at 119:12-14.) He opined that Defendant's alleged failure to accommodate Plaintiff's condition caused her health to severely decline and prevented her from serving as a "functioning and capable teacher." (Vinitsky Report at 3-4.)

Two of Defendant's experts, Dr. Scarupa and Dr. Peck, testified at the hearing.[3] Dr. Scarupa opined that

> virtually all of the diagnoses [including MCS] made by Dr. Vinitsky have been made with little scientific or medical evidence . . . [and] are either not accepted as a recognized disease by the medical establishment or have been made by such unconventional, non-scientific, non-standardized means as to have, at best, questionable validity.

---

[2] According to Dr. Vinitsky, individuals may develop MCS due to repeated exposures to volatile organic chemicals ("VOCs"), such combustible or manufactured products, bacteria or molds, or natural fragrances. (Pl.'s R. 26(a)(2) Disclosures Ex. B ("Vinitsky Report") at 7 (ECF No. 48).) These VOCs trigger the nervous systems of individuals with MCS at relatively low levels. *Id.* Genetic predisposition often constitutes the root cause of this sensitivity. *Id.*

[3] Defendant's third expert, Robert Jackson ("Mr. Jackson"), serves as a vocational expert and did not testify at the hearing. (Def.'s R. 26(a)(2) Exp. Disclosure Ex. C.)

4

(Def.'s R. 26(a)(2) Exp. Disclosures Ex. A ("Scarupa Report") at 12 (ECF No. 78).) Dr. Peck opined that the "causal basis for [Plaintiff's] complaints . . . . [are] Somatization Disorder . . . , as well as Major Depression." (Def.'s R. 26(a)(2) Exp. Disclosures Ex. 2 ("Peck R. 35 Evaluation") at 17.)

## II. ANALYSIS

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. According to that rule,

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> >
> > (b) the testimony is based on sufficient facts or data;
> >
> > (c) the testimony is the product of reliable principles and methods; and
> >
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

"Rule 702 thus 'imposes a special gatekeeping obligation on the trial judge' to 'ensur[e] that an expert's testimony both rests on a *reliable* foundation and is *relevant* to the task at hand.'" *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021) (alterations in original) (citation omitted). First, to assess reliability, a court must conduct a "flexible" inquiry into the "principles and methodology" underlying an expert opinion. *Daubert*, 509 U.S. at 594-95. Rule 702 requires an opinion "ground[ed] in the methods and procedures of science" that constitutes "more than a subjective belief or unsupported speculation." *Id.* at 590. Courts may consider "four, non-exhaustive guideposts" in this analysis, including:

> (1) whether the expert's theory or technique "can be (and has been) tested";

5

(2) "whether the theory or technique has been subjected to peer review and publication";

(3) "the known or potential rate of error" inherent in the expert's theory or technique; and,

(4) whether the expert's methodology is generally accepted in his field of expertise.

*Sardis*, 10 F.4th at 281 (citation omitted).

Second, under the relevance inquiry, an expert's opinion must have "a valid scientific connection to the pertinent inquiry," *Daubert*, 509 U.S. at 592, which "helps 'the trier of fact to understand the evidence or to determine a fact in issue,'" *Sardis*, 10 F.4th at 281 (citation omitted). Courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," *Kumho Tire, Ltd. v. Carmichael,*, 526 U.S. 137, 152 (1999), and appellate courts will review their decisions on these issues only for abuse of discretion, *Sardis*, 10 F.4th at 280.

Defendant first argues that the Court should exclude the opinions of Plaintiff's remaining expert as unreliable under *Daubert*. First, it contends, Dr. Vinitsky's opinion proves unreliable, because he did not use any methodologies that he claimed should have been used to diagnose Plaintiff's MCS; those methodologies have not undergone peer review; that Dr. Vinitsky could not identify any known or potential error rate for MCS diagnoses; and the medical establishment does not accept MCS as a valid diagnosis. (Def.'s Mem. at 5-8.) Defendant further asserts that Plaintiff's expert opinion is irrelevant. (Def.'s Mem. at 13-15.) Plaintiff responds that her expert's opinions meet the admissibility requirements under Rule 702 and *Daubert*.[4] (Opp'n at 17-24.) With this background in mind, the Court now turns to Dr. Vinitsky's opinion.

---

[4] In its Reply, Defendant requests that the Court strike Plaintiff's Opposition to its Motion to Exclude for untimeliness. (Reply at 1-2.) During the hearing, the Court declined to penalize Plaintiff for any timeliness issues. (Hrg. Tr. at 4:19-23.) The Fourth Circuit recently emphasized the importance of making "explicit findings, whether by written opinion or orally on the record, as to the challenged preconditions to admissibility [of expert testimony]." *Sardis*, 10

6

Although the Fourth Circuit has not yet opined on this particular issue, federal courts have long held that "multiple chemical sensitivity 'is a controversial diagnosis that has been excluded under *Daubert* as unsupported by sound scientific reasoning or methodology.'" *Madej v. Maiden*, 951 F.3d 364, 374-75 (6th Cir. 2020) (collecting cases) (quoting *Summers v. Mo. Pac. R.R. Sys.*, 132 F.3d 599, 603 (10th Cir. 1997)). Although many cases addressing MCS were decided over a decade ago, the Sixth Circuit rejected expert testimony on MCS as unreliable as recently as 2020, and Dr. Vinitsky did not present any evidence to demonstrate advancements in the scientific community that would indicate broad acceptance of the MCS diagnosis. *See Madej*, 951 F.3d at 375 (noting that courts had decided many of the cases excluding expert testimony regarding MCS over a decade ago, but still excluding expert opinion on the subject, because no evidence showed acceptance by the scientific community in the intervening years).

According to Plaintiff, however, federal courts have begun to accept MCS as a diagnosis. (Opp'n at 15.) The Court disagrees with her view of case law on the subject, as federal courts appear to consistently reject expert testimony on MCS for lack of reliability. Notably, the cases that Plaintiff cites in support of her proposition are inapposite, because they do not pertain to the admissibility of expert testimony under *Daubert* and Federal Rule of Evidence 702. (Opp'n at 2, 16-17) (citing *Porter v. Queen's Med. Ctr.*, 479 P.3d 148, 150 (Hawaii 2021) (state-law worker's compensation claim); *Parnagian v. MetLife Disability Ins. Co.*, 2017 WL 4366968, at *1 (D. Mass. Sept. 29, 2017) (denial of long-term disability benefits); *Hawkins v. Ark. Dep't of Human Servs.*, 2017 WL 10621235, at *1 (E.D. Ark. Apr. 3, 2017) (summary judgment); *Rotkowski v. Ark. Rehab. Servs.*, 180 F. Supp. 3d 618, 620 (W.D. Ark. 2016) (motion for judgment on the

---

F.4th at 283 (citation omitted). In light of the *Sardis* ruling, and to ensure that it thoroughly addresses the parties' arguments, the Court will not strike the Opposition for untimeliness.

pleadings); *Bouard v. Ramtron Int'l Corp.*, 2013 WL 5445846, at *1 (D. Col. Sept. 27, 2013) (summary judgment); *Brady v. United Refrigeration, Inc.*, 2015 WL 3500125, at *1 (E.D. Pa. June 3, 2015) (summary judgment).)[5] Others constitute appeals from denials of benefits by Administrative Law Judges within the Social Security Administration. (Opp'n at 15 (citing *Cabe v. Saul*, 2021 WL 2580122, at *1 (D. Alaska June 23, 2021); *Janet M.B. v. Saul*, 2019 WL 6170726, at *1 (C.D. Cal. Nov. 20, 2019); *Gaudette v. Berryhill*, 2018 WL 2754078, at *1 (D. Mont. Jun. 8, 2018); *Teitelbaum v. Astrue*, 2011 WL 5293278, at *1 (C.D. Cal. Nov. 3, 2011); *Wall v. Astrue*, 2010 WL 2757514, *1 (C.D. Cal. Jul. 13, 2010); *Brandenburg v. Astrue*, 2010 WL 2621254, *1 (S.D. Ohio Jun. 3, 2010)).) Thus, these cases do not impact the outcome of the Court's *Daubert* analysis.

Moreover, Dr. Vinitsky's opinion does not pass muster under the *Daubert* test for reliability. First, the hearing testimony from both Dr. Scarupa and Dr. Vinitsky himself revealed that no established technique for diagnosing MCS exists. Dr. Vinitsky admitted that there is no "per se" test to diagnose MCS. (Hrg. Tr. 91:13-24.) Although the "preferable" method to test for MCS would consist of exposing a patient to a scent or chemical in a double-blind study using a "special chamber," Dr. Vinitsky did not use this method to diagnose Dr. Anderson, and he

---

[5] Beyond the fact that these cases do not relate to Rule 702 and *Daubert*, Plaintiff also overstates the receptiveness of these courts to the MCS diagnosis. For example, the *Bouard* court found genuine disputes of material fact as to whether fragrance sensitivity qualified as a disability under the ADA. *Bouard*, 2013 WL 5445846, at *8. Further, the *Rotkowski* court cautiously emphasized that, although the plaintiff had plausibly alleged that scent sensitivity constituted a disability under the ADA, the case still remained at an "early stage of litigation," because it involved a motion for judgment on the pleadings, which courts analyze like a motion to dismiss. *Rotkowski*, 180 F. Supp. 3d at 621, 625. Lastly, in *Parnagian*, the court affirmed the denial of long-term disability payments for MCS. 2017 WL 4366968, at *6-7. These cases only underscore courts' hesitance to recognize the MCS diagnosis.

stated in his deposition that this chamber "doesn't usually exist." (1st Vinitsky Depo. at 117:4-5; Hrg Tr. at 95:2.)

Moreover, as Dr. Scarupa testified, peer-reviewed journals have undermined the purported reliability of the double-blind chamber technique, as published research has demonstrated that these exposure chambers "[are] not diagnostically accurate." (Hrg. Tr. at 119:16.) According to Dr. Scarupa, no scientific consensus on the existence of MCS as a "unique entity" exists, and as a result, no consensus on how to diagnose the condition exists, either. (Hrg. Tr. at 117:18-21.) Dr. Scarupa elaborated that the laboratory tests on which Dr. Vinitsky relied to diagnose Plaintiff with MCS serve merely as "investigational" tools, because "they're not standardized," meaning that "we don't know necessarily how these labs perform in the normal population . . . because we don't have good, established controls for many of these labs." (Hrg. Tr. at 121:15, :19-21, :23-24.)

In fact, as Defendant correctly highlights, Dr. Vinitsky could not rule out other potential causes of Dr. Anderson's symptoms, including mast cell activation and autoimmune hypothyroidism. (Reply Ex. A ("2d Vinitsky Depo.") at 198:4-8; Hrg. Tr. at 106:11, :21-25-107:1-4; *see also* Vinitsky Report at 10-23 (listing mast cell activating syndrome; plica ventricularis, or false vocal cords substituting for actual vocal cords; autoimmune thyroiditis; autonomic neuropathy; emotional trauma; decreased ability to clear biotoxins; nutritional deficiencies; immune dysfunction; and infections as potential causes of her symptoms).) For these reasons, Dr. Vinitsky fails to satisfy even the first prong of the *Daubert* reliability factors.

Second, Dr. Vinitsky's opinion does not meet the *Daubert* test, because he could not show that MCS had been subject to meaningful peer review. Dr. Vinitsky testified that he relied on peer-reviewed articles when making his diagnosis of MCS, and that science on the subject has

advanced since 1990. (Hrg. Tr. at 70:13-71:22.) However, Dr. Scarupa testified that, since 1999, the scientific articles "advocating for the diagnosis of [MCS] exist . . . but haven't had enough power or have not been considered rigorous enough to change opinion broadly." (Hrg. Tr. at 128:19-23.) In his literature review, Dr. Scarupa utilized UpToDate, an article review series maintained by experts that continuously updates based on newly published, peer reviewed articles, as well as other scientific research services, and he could not identify a medical consensus that "MCS is now a recognized and known medical entity" or a "specific diagnosis" in 2021. (Hrg. Tr. at 120:5-121:4.) Without the requisite peer-reviewed scrutiny of the MCS diagnosis, Dr. Vinitsky's opinion also fails the second *Daubert* prong.

Third, no means of measuring the error rate of MCS diagnoses exists. Dr. Vinitsky acknowledged that he had no reliable means of measuring how often individuals receive incorrect MCS diagnoses, other than noting that they have not responded to the treatment prescribed for the condition. (Hrg. Tr. at 108:24-109:6.) Nor had he attempted to calculate such an error rate or read any publications that did so. (1st Vinitsky Depo. at 117:22-118:2; Hrg. Tr. at 109:1-12.) Dr. Scarupa's testimony confirmed the absence of a known or potential error rate. When asked whether the error rate of MCS diagnoses could be calculated, Dr. Scarupa responded, "Absolutely not." (Hrg. Tr. at 119:24-120:2.) Dr. Vinitsky's opinion, therefore, does not fulfill the third *Daubert* reliability factor.

Fourth, and finally, the medical community has not accepted MCS and Dr. Vinitsky's diagnostic techniques. As previously discussed, Dr. Scarupa testified that the medical community does not acknowledge MCS as a "specific diagnosis." (Hrg. Tr. at 121:3-4.) He continued that he did not know of any major American or international medical organizations that recognize MCS as a diagnosis, including the World Health Organization, the American

Medical Association and the American Academy of Allergy, Asthma and Immunology ("AAAAI"). (Hrg. Tr. at 127:9-128:23.)

Likewise, Dr. Vinitsky himself testified that he had not read an official paper by one of these organizations endorsing MCS as a recognized illness, and that it was his "understanding" that the AMA had not accepted the diagnosis. (Hrg. Tr. at 71:23-72:13.) Likewise, he indicated that it was his "understanding" that the AAAAI as an entity does not recognize MCS; rather, merely some doctors within the organization accept the diagnosis. (Hrg. Tr. at 72:24-73:4.)

Additionally, Dr. Vinitsky provided unclear testimony regarding the WHO's stance on MCS. During his deposition, he reported that he did not know whether the WHO lists MCS in its International Classification of Diseases. (1st Vinitsky Depo. at 168:3-7.) During the hearing on the instant Motion, he stated that the WHO accepts MCS but labels the diagnosis as "idiopathic environmental intolerance." (Hrg. Tr. at 72:14-20.) However, he had previously noted that "people who don't believe that [MCS] exists [as a diagnosis] call it idiopathic environmental intolerance." (1st Vinitsky Depo. at 119:15-120:1.) By his own testimony, then, Dr. Vinitsky appeared to suggest that the WHO falls in the category of those who do not believe in MCS. Because of this lack of clarity, and the greater weight that the Court assigned to Dr. Scarupa's opinion during the hearing, the Court accepts Dr. Scarupa's opinion over Dr. Vinitsky's on this matter. (Hrg. Tr. at 147:13-16.) For these and the foregoing reasons, the Court finds that Dr. Vinitsky's opinion does not meet the last factor in the test for reliability and cannot survive Defendant's *Daubert* challenge. [6]

---

[6] Because the Court will exclude the opinions of Dr. Vinitsky for lack of reliability, it will not address relevance under Rule 702. *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 605, 607 (S.D.W. Va. 2013) (excluding expert opinions for lack of reliability without addressing relevance).

11

### III. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's Motion to Exclude as to Dr. Didriksen and Dr. Vinitsky (ECF No. 90).

An appropriate Order shall issue.

Let the Clerk file a copy of this Order electronically and forward a copy to all counsel of record.

It is so ORDERED.

_____/s/_____
David J. Novak
United States District Judge

Richmond, Virginia
Dated: January 10, 2022

12